

**EXHIBIT**

A
_____

# COMMONWEALTH OF VIRGINIA



STAFFORD CIRCUIT COURT
Civil Division
1300 COURTHOUSE RD PO BOX 69
STAFFORD VA 22554
(540) 658-4220

Summons

To: STAFFORD COUNTY SCHOOL BOARD        Case No. 179CL20000597-00
SERVE: SCOTT R KIZNER, PH.D
SUPERINTENDENT
31 STAFFORD AVENUE
STAFFORD VA 22554

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, October 22, 2020

Clerk of Court: KATHLEEN M STERNE

by _____
(CLERK/DEPUTY CLERK)

Instructions:    PLEASE SERVE COMPLAINT AND ALL SUPPORTING DOCUMENTS AND RETURN
SERVICE

Hearing Official:

Attorney's name:    CHRISTOPHER R RAU ESQUIRE
703-536-1660

**V I R G I N I A :**

### IN THE CIRCUIT COURT FOR THE COUNTY OF STAFFORD

**RICHARD RICE, JR.,**                )
                                      )
    Plaintiff,                      )   C.A. No. *CL20000597-00*
v.                                    )
                                      )
**SCHOLASTIC BOOK FAIRS, INC.,**      )
and                                   )
**STAFFORD COUNTY SCHOOL BOARD,**     )
and                                   )
**KAREN DUFFY,**                      )
                                      )
    Defendants.                     )

### COMPLAINT AND JURY DEMAND

COMES NOW your plaintiff, RICHARD RICE, JR., by counsel, and moves this Honorable Court for judgment in his favor against the Defendants, SCHOLASTIC BOOK FAIRS, INC., (hereinafter, "Scholastic" or "SBF"), and STAFFORD COUNTY SCHOOL BOARD, and KAREN DUFFY, and in support of said request respectfully alleges and avers as follows.

### Nature of the Action

1.   This is a civil action by Plaintiff Richard Rice, Jr. against his former employer, Scholastic Book Fairs, Inc., under Title VII of the Civil Rights Act of 1964, as amended, for discrimination in discipline, terms and conditions of employment, and discharge; and this is also an action against the Stafford School Board, individual actor Karen Duffy, and said Scholastic Book Fairs, pursuant

to 42 U.S.C. § 1983 and 42 U.S.C. § 1986, for deprivation of various constitutional rights. This action states a claim for discriminatory discipline and resultant discharge based upon Mr. Rice's sex, male.

### Parties, Jurisdiction and Venue

2.   At all relevant times herein, Plaintiff RICHARD RICE, JR. was and is an adult, male American citizen, and a resident and domiciliary of Stafford County, in the Commonwealth of Virginia.

3.   Plaintiff Rice was employed full-time by Defendant Scholastic Book Fairs, Inc., from July 27, 2015, until on or about November 6, 2019.

4.   Upon information and belief, at all relevant times herein, Defendant SCHOLASTIC BOOK FAIRS, INC. was and is a corporation organized and existing under the laws of Delaware, duly authorized to transact business in the Commonwealth of Virginia, and elsewhere, on a nationwide basis.

5.   Upon information and belief, Defendant STAFFORD SCHOOL BOARD (or as used herein "the School Board"), does business as STAFFORD COUNTY PUBLIC SCHOOLS, and is the legally constituted *sui juris* entity, composed of individual members elected by the voters of Stafford County, vested with the powers and duties set forth in,

2

among other places, Chapter 7 of Title 22.1 of the Code of
Virginia, and otherwise charged with running and managing
public schools and setting public school policies,
practices of an operational nature, in Stafford County,
Virginia, including, but not limited to, management of
schools, and setting and application of policies and
procedures and customs for admission and/or exclusion of
individuals to certain school board properties, as well as
operations of various schools and libraries in those
schools, in Stafford County, Virginia.

   6.   Upon information and belief, the School Board is
also charged with the legal duty to, and also sets, whether
informally or formally, policies, customs and practices, if
not procedures, for issuance of "no-trespass" orders and/or
instructions or orders otherwise subjecting various
individual and/or institutional members of the public,
including your Plaintiff, to be physically excluded, or
"barred" from entering premises owned and/or controlled by
the Defendant School Board.

   7.   Upon information and belief, at all times
relevant hereto, Defendant KAREN DUFFY was and is believed
to be a resident a domiciliary of Stafford County,
Virginia, and at all times referenced herein, is believed
to have had the occupational title of Professional Learning

3

and Instructional Design Lead, for the department of
Learning and Organizational Development, employed by
Stafford County Public Schools' main office, with some sort
of loosely delegated, and/or arrogated or *de facto*
authority over, individual librarians within the Stafford
Public Schools, and/or the providers of content to them.
She is sued in this action in her individual capacity.

8.  This Court has jurisdiction over Plaintiff's
Title VII Claims, pursuant to Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3)), as applied
to Plaintiff's claims of disparate treatment and discharge,
based upon sex, and 42 U.S.C. §§ 1983 and 1986, as to the
constitutional claims asserted against each of the
Defendants.

9.  All Defendants are subject to the personal
jurisdiction of this Court pursuant to Va. Code § 8.01-
328.1(1), (2) and/or (3).

10.  All Defendants are present in, and regularly
conduct affairs and activities in, Stafford County, and the
causes of action alleged in this action arose, in
substantial part, in and around Stafford County, in the
Commonwealth of Virginia.

11.  But for the unlawful and unconstitutional actions
of the Defendants referenced herein, Mr. Rice would still

be employed in Stafford County, and in other counties and localities in Virginia.

12.   Venue over Rice's claims is proper in this Court.

### Factual Background

13.   On or about July 27, 2015, Mr. Rice began employment with Scholastic Book Fairs, Inc., as a Book Fair Field Representative, until informed he was terminated from that position, by Defendant Scholastic Book Fairs, with active employment ending on or about November 6, 2019.

14.   At all times relevant hereto, Mr. Rice performed the functions of his position with Scholastic Book Fairs in at least a satisfactory manner, and often in an exemplary manner, and often exceeded his job requirements.

15.   At all relevant times referenced herein, each of the employees and agents of Defendant Scholastic Book Fairs, including, to the extent described below, Defendant Karen Duffy, were acting within the scope of his or her [as applicable] actual and/or apparent authority on behalf of Defendant Scholastic Book Fairs.

16.   On or about late August or early September of 2018, Defendant Scholastic Book Fairs hired and/or reassigned, Greg Ball, believed by your Plaintiff to be a homosexual male, to take over as the Manager for the East Region, above Plaintiff and others, working for Defendant

Scholastic Book Fairs.   Field Sales Representatives
employed by Scholastic Book Fairs, however, are
overwhelmingly female.

17.   Ball took an immediately dislike to Mr. Rice,
criticizing, among other things, Rice's choice in clothes,
and chiding Rice early on in Rice's employment:   "you need
a shave," even though Rice was neatly groomed, with a look
incorporating a slightly unshaven look.

18.   Likewise, Ball instructed Mr. Rice that it was
not appropriate or "ok" for Rice to, on occasion, shake
hands with, touch, much less hug, a given Library or
Assistant Librarian, while not stating or enforcing an
similar prohibition on female Field Sales Representatives,
from engaging in the same behaviors.

19.   On or about November of 2018, Mr. Rice received a
telephone call from his supervisor, the said Regional
Manager, Greg Ball, informing Rice that Rice had allegedly
been forbidden from entering any Stafford school premises,
for purposes of work, soliciting business, or otherwise,
"until further notice."

20.   At the time, Rice expressed bewilderment, and
stated to Ball that Rice had not engaged in any improper or
untoward behavior towards any Stafford School Board
employee.

6

21.   No one ever interviewed Rice as to what, if
anything, had happened, to allegedly cause him to be
physically barred from entering Stafford Schools premises,
and upon information and belief, Defendant Scholastic Book
Fairs made no investigation of its own, of any such item/s.
Likewise, Rice had no hearing, or opportunity to be heard,
by either School Board persons, or persons from his
employer, or the Stafford County Schools, regarding this
exclusion and change.

22.   Mr. Rice received no prior notice that the School
Board and/or as he later ascertained, Ms. Duffy, were
considering barring him from their physical premises, much
less an opportunity to be heard, or respond to, any
allegations or items or alleged reasons cited as any
alleged basis for doing so, whether by hearing, or
otherwise.

23.   On or about January 30, 2019, arising out of the
above events, Mr. Rice was furnished by Scholastic Book
Fairs, and Greg Ball [and in turn, Karen Duffy and the
Stafford School Board], the attached document entitled
"Corrective Action Form," **Exhibit #1**, which, among other
things:  (a) stated that Rice "was no longer welcomed in
any school in Stafford County," [as relayed through Duffy];
and (b) falsely claimed that "during a county-wide meeting

of librarians, several voiced their concerns about
Richard's approach while visiting their schools"; and (c)
falsely purported to ascribe fault and/or responsibility
for this state of affairs, as being "perceived substandard
performance," on Rice's part [there being no substandard
performance whatsoever]. Upon information and belief, in
connection with events leading up to this document, as well
as thereafter, Scholastic effectively "outsourced" to the
School Board, and/or Duffy, various elements of decision-
making, regarding not only Plaintiff's physical disposition
around school properties, but also his employment, as well
as any purported investigatory measures related thereto, as
set forth in Exhibit #1.

24.   Upon information and belief, for a period of
weeks and months thereafter, and continuing to this day,
Rice has been barred from entering any Stafford schools
property, such limitation also being unclear as to:   (a)
whether it is limited to business-related purposes, (b)
whether such limitation is to entering on business on
behalf of Scholastic Book Fairs, or also extents to on
behalf of any other person or entity, and Mr. Rice is also
unsure (c) whether [and he has fear and trepidation at, the
potential embarrassment of entering any Stafford School as
result of] he can sell something, vote, or attend an

8

athletic or academic or other event, or even a parent-
teacher conference, involving his teenage son [who at all
relevant times herein, has been, and is, an active student
in the Stafford County School system], on any Stafford
Schools property, for fear of being ignominiously escorted
or called out in front of others, and/or charged with
trespassing, due to the instruction or order referenced
above.  This state of affairs is ongoing as of the date of
this filing.

25.  Defendants imposed requirements and disciplinary
and/or performance standards upon Rice not imposed upon
similarly situated female employees and/or vendors who were
acting solely through female representatives.  Defendants
did not act on any such complaints as may have been
registered, and were registered, regarding Plaintiff's
female co-workers.

26.  Upon information and belief, Defendants ascribed
ill intent, and/or improperly ascribed or assessed Rice to
be a "threat," based upon nothing other than his being a
heterosexual male, and/or his exhibiting qualities topic
conversations and choices, and behaviors and attributes,
characteristic, and sometimes stereotyped as characteristic
of, that legally protected status, all while Rice was in
the normal course of performing his duties on behalf of

9

Defendant Scholastic Book Fairs.

27.   Upon information and belief, Defendants ascribed mendacity to Rice, and purported to assess him as somehow lacking in trustworthiness, credibility, or lacking in fitness to be selling things in and about the administrative offices and libraries of all Stafford County schools, or as somehow constituting a "threat," or "too personal" in his conversations, due to his status as a male, and not due to purported exceptions to his behavior, and in particular, those purported by Defendants to have been made *after* the said exclusion or debarment was handed down, as having little or nothing to do with his ability to competently and efficiently perform the material functions of his position.

28.   Rather, these had to do with the fact that he was a heterosexual male person functioning in a governmental industry [school libraries and school library supplying and vending], overwhelmingly dominated, and controlled by, female persons and employees, who expressed, whether indirectly or indirectly, an apparent preference or "comfort" level to deal only with female persons, Stafford Schools being an apparent example of this.

29.   Defendants singled Rice for disparate debarment, both physical and professional, from Stafford Schools,

based upon behaviors which, upon information and belief, numerous similarly situated  female employees and/or third party visitors and/or vendors have engaged in, and continue to engage in, or are believed to have engaged in, at some level or another on a daily and/or routine basis, including those alleged to have been engaged in by Rice.  Upon information and belief, numerous criticisms of female vendor employees, have all but gone unnoticed, and/or were routinely overlooked by Defendants, and moreover, have never been solicited in such a manner as was done with Rice, both on an operational level, and otherwise. Likewise, no female employee or vendor agent has been criticized or disciplined, much less ostracized or excluded, for being "too personable," as Rice appears to have been.

30.  Defendant Scholastic Book Fairs intentionally failed and refused to seek clarification, limitation, basis, or particularization, regarding unspecified alleged "complaints" in a manner that the same could be tested for accuracy, and effectively rebutted, as a direct and proximate result of Rice's status as a male accused of acts allegedly unwelcome to one or more others.

31.  Defendants overlooked or ignored such complaints as any persons might have had, whether properly grounded or

not, in his female co-workers, including, but not limited
to, Sarah Smith, due to their sex, female.

32.  Upon information and belief, Defendants initiated
and issued a discriminatory actions, including, but not
limited to, an unsupported physical exclusion of Mr. Rice
from all Stafford school premises, as well as a later
*solicitation* of criticism of interactions with Rice [*after*
barring him from the premises], in an after-the-fact
attempt to justify, and/or manufacture, on a *nunc pro tunc*
basis, false or trumped up grounds for his arbitrary
exclusion from, not just schools involving one or more who
might have expressed a desire at some point, not to deal
with Rice and/or Scholastic, but in a grossly overbroad
sweep to embrace debarment of Rice from doing business
with, much less appearing at, any school in the *whole
school system*.  All of these actions, as well as their
overbreadth, were motivated, in substantial part, by Rice's
sex, male.

33.  Upon information and belief, none of the
Defendants has similarly excluded, without due process,
and/or debarred and physically and legally barred, any
female person, from any Stafford Schools premises, much
less later purported to "gin up" supporting bases therefor,
much less discipline or fire, any female employee or third

party vendor agent, in even a remotely similar manner as Rice was dealt with, as described above.

34. On or about November 6, 2019, Rice was terminated by Scholastic Book Fairs, again according to Ball, based upon the [discriminatory] warning and exclusion from Stafford Schools business received back in January of that year, but also allegedly based upon an alleged [but non-existent] later alleged "complaint" of a similar nature, allegedly made about Rice, this time, Ball said, from a different female librarian in the Prince William County School System, who also purported to have expressed a lack of "comfort" in dealing with Rice. When Rice inquired further of Ball as to the identity of the Complainant, and the particulars of the alleged Complaint, Scholastic and Ball refused to provide any information to Rice; upon information and belief, no such Complaint or alleged violation of the January 1, 2019 warning, Exhibit #1, occurred at all. Upon information and belief, no female employee of Scholastic, or any other female agent or employee of a school vendor to Stafford County school system, has been singled out for discipline, barred from Stafford schools premises, or terminated, based upon any alleged customer expression of lack of comfort or other alleged customer feedback regarding, Scholastic's (or any

other such vendor's] individual employee or agent.

35.   On or about November 13, 2019, Rice initiated charge proceedings to file a charge of discrimination against defendant Scholastic Book Fairs, with the U.S. Equal Employment Opportunity Commission, arising out of the above facts, and separation, charging discrimination on the basis of sex.

36.   On or about November 14, 2019, Rice received from the U.S. Equal Employment Opportunity Commission a letter dismissing his intake charge of discrimination in Charge No.524-2020-00261, and otherwise was accorded the "right to sue" in respect of the facts referenced above, and Rice has otherwise properly exhausted all administrative remedies and prerequisites to bringing the following claims in this Honorable Court.  A true and correct copy of said "Right-to-Sue" Notice is attached hereto, and incorporated herein, at **Exhibit #2.**

37.   As a direct and proximate result of the Defendants' unlawful actions enumerated above and below, Rice has suffered loss of employment, loss of health and other benefits, loss of wages, loss of professional reputation and opportunities, and has sustained emotional pain, loss of sleep, self-doubt, and mental anguish, embarrassment, and guilt associated with said separation,

resulting in financial hardship, and damage to his credit rating and financial standing, and continues to suffer these in amounts continuing to accrue, in an amount to be more particularly stated at trial.

38. As referenced and alleged hereinabove and hereinbelow, all acts of malfeasance, misfeasance and nonfeasance of the Defendants, either individually or acting by and through their various, as to Rice, up through and including the termination of his employment with Defendant Scholastic Book Fairs, were taken with actual knowledge on each Defendant's part, as to its' or her obligations at law, and/or under circumstances where each Defendant, or Defendant's agents, acted with reckless disregard as to what her or its' obligations to Rice were (and are) at law, and said actions were taken with willful and wanton indifference to, and or as part of an affirmative effort to thwart and emasculate, the statutorily protected rights, and constitutional, rights of Mr. Rice.

### COUNT ONE

(Disparate treatment and discharge on the basis of gender, in violation of Title VII, Civil Rights Act of 1964 – Scholastic Book Fairs)

39. Paragraphs 1 through 38 above are hereby incorporated and restated herein.

15

40.  At all relevant times herein, defendant Scholastic Book Fairs was an entity in an industry affecting commerce, which had over five hundred employees for each working day in each of twenty or more calendar workweeks in the current or preceding calendar year.

41.  Defendant Scholastic Book Fairs, through Greg Ball, and Defendants School Board and Defendant Duffy, and others, discriminated against Rice, with respect to the terms, conditions, and privileges of his employment, as well as access to County School Board facilities and business opportunities, and saw to the disciplining, and the eventual discharge of Rice, in substantial part, because of his being a male, and his exhibiting of characteristically male behaviors.

42.  The barring of Rice from Stafford Schools premises, and conditions under which this counseling and/or discipline was made, saw Defendants, through Duffy, Ball and others, arbitrarily soliciting and/or elevating negative input regarding Rice, in a manner not visited upon any female person or employee visiting there (whether vendor or otherwise), and arbitrarily selected from, or elevated alleged concerns about Rice, not having any concrete or realistic basis in reality or practicality, but in reality, upon the basis that Rice was and is, a male.

43. Defendants otherwise used previous alleged acts and statements of Rice, a heterosexual male, of an innocuous and/or sales-designed nature, while so employed, as an alleged negative factor in improperly assessing Rice as somehow having been, or being, "threatening" or "intimidating" as to justify effectively labeling him to be a threat to the safety and well being of others, and falsely justifying his physical and professional exclusion from Stafford County Public Schools premises.

44. These actions were motivated, in substantial part, by Rice's sex and gender status as not only a male, but as a male who exhibits gender-based stereotypes and behavior patterns, said persons perceived by Defendants as being excessively "male" for their work place, and tastes, all to Rice's continuing damage and detriment, as referenced above.

45. Upon information and belief, after Rice was barred from Stafford, and continuing after he was terminated by Scholastic, all Field Sales Representatives of Scholastic Book Fairs, having any regular or recurring contact with any Stafford School official, and in particular, those physically appearing at Stafford Schools premises for any purposes, have been performed exclusively by a female employee of Scholastic Book Fairs; Mr. Rice has

17

been replaced by a member of the opposite sex.

## COUNT TWO

(Violation of Rice's constitutional rights by Stafford School Board, Karen Duffy and Scholastic Book Fairs, Inc.)

46.   Paragraphs 1 through 45 above are hereby incorporated as if set forth verbatim in this count.

47.   The speech activities in which Mr. Rice engaged in, during the course of performing his duties as a Field Sales Representative, both with the Stafford County public school personnel, and otherwise, were not deceptive, or illegal, and were protected by the First Amendment of the United States Constitution.

48.   Mr. Rice's mistreatment by, and debarment by, Karen Duffy, eventually resulted in him being discharged from his employment, for various elements of commercial speech or expression, as well as his sex, thusly also denying him equal protection of the laws, as conferred by the Fourteenth Amendment of the U.S. Constitution, among other laws.

49.   Both Duffy and on behalf of Scholastic, Ball, engaged in active solicitation of negative feedback or content about Rice, in an conscious effort to single him out for disparate treatment, as well as engage in an effort designed to produce result then foreseeable to each,

involving Rice being disciplined and/or discharged from his employment, as a result of alleged feedback solicitation, as well as the unfair manner in which the same was solicited, as well as selectively cited and packaged, and/or reported. Upon information and belief, the "meeting" referenced in Exhibit #! hereto, never occurred at all.

50. Under the circumstances described above, Stafford School Board has, and had, no substantial or material interest, to be advanced, by restrictions on individual commercial speech, as well as the restriction of physical access to schools premises, as were (and are)being unlawfully visited upon Mr. Rice.

51. Defendants' conduct in issuing, maintaining and/or enforcing the admonition, order or instruction to Mr. Rice not to come to any Stafford County School, infringed upon Mr. Rice's substantive and procedural due process rights under the 14th Amendment of the U.S. Constitution, both relating to his property interest in his employment, as well as his personal and professional reputation.

52. Upon information and belief, Defendant Karen Duffy lacked any rational justification related to an legitimate governmental interest, and acted arbitrarily and

capriciously, and without express written authority of the School Board, in issuing the initial [and continuing, it appears] debarment of Rice [both physically and professionally] from school premises, and/or prohibition on soliciting or servicing of Stafford school business of any kind.

53.   Mr. Rice's above-referenced physical and professional debarment from Stafford Schools premises and business is further unconstitutionally vague, and also violative of due process rights of Mr. Rice, in as much as he cannot determine the nature and extent of the debarment, such as whether the same extends to his entering Stafford Schools for his son's athletic or to otherwise monitor and guide the education of his son, or whether he can enter such premises for such a purpose as voting or a community meeting, or whether he can enter Stafford school premises on behalf even, of a different schools vendor.

54.   Upon information and belief, on behalf of Scholastic Book Fairs, Greg Ball agreed, either tacitly or expressly, and conspired with Karen Duffy, and/or possibly others with actual and/or apparent School Board authority, to single out Mr. Rice, to deprive him of his constitutional rights referenced above and below, and for exclusion and criticism, motivated by Rice's sex, male.

55.  In so doing, the Defendants violated Rice's right to equal protection of the law, under the Fourteenth Amendment of the United States Constitution, as no similar seeming edict or efforts are believed to have been made by any Defendant, as to any similarly situated female employee or vendor representative.

56.  In engaging in the acts described above, Defendants Scholastic Book Fairs and Karen Duffy, conspired to violate 42 U.S.C. § 1983, and thusly also violated 42 U.S.C. § 1986, by agreeing to ban Rice from *every single school*, and discriminate against him on the basis of his sex, male, having the effect not only of depriving him of the constitutional rights and interests described above, but also clouding his good name, professional, and personal reputation, all on an ongoing basis.

57.  The actions described above infringed upon Rice's occupational liberty, and right to pursue his chosen employment, without unlawful interference motivated by his sex.

58.  As described above, Rice has also suffered reputational harm, as well as alteration of his legal status with respect to premises and business of the Stafford School System, as to be unduly susceptible to causing destruction of his future professional or

employment prospects, and as the same were also purportedly relied upon by Scholastic Book Fairs, in whole or in part, in terminating Rice's past employment.

59. Upon information and belief, the decision of said Stafford School Official and Defendant, Karen Duffy, to physically and professionally exclude Rice from all Stafford School premises, although part of a regular practice of the School Board, was a non-routine occurrence, and was not part of any regularly implemented, much less structured or principled, decision-making procedure, much less one involving notice to, and an opportunity to be heard by, Mr. Rice.

60. Rather, upon information and belief, said exclusion of Rice, as well as the subsequent solicitation efforts, on a *post hoc*, basis, of input, in an effort to supposedly give support to said decision, was and is part of a practice or custom of the Defendant School Board of acquiescing in the arrogation of assumption of seemingly unbridled, unregulated, and arbitrarily exercised authority, by various individual agents and employees of the School Board, such as Defendant Karen Duffy, to issue overly broad and unfounded trespass orders, or otherwise "ban" certain individuals and/or content, including Mr. Rice, from Stafford School properties.

61.   On or about December 2019, prior to filing this action, Mr. Rice himself orally petitioned the Defendant Stafford School Board members, at a regular meeting of theirs, on the record, in regard to these events, in an effort to also achieve the dissolution or withdrawal of his debarment from School facilities, in response to which no meaningful statement or action was taken, by the said School Board.

62.   Upon information and belief, over the years, the Defendant School Board has, on multiple occasions, knowingly acquiesced in the assertion of [whether well-taken or not] of legal and factual authority by various management personnel employed by, and acting on behalf of, Stafford Schools, including, but not limited to, Defendant Karen Duffy, to exclude or bar, or place other persons and/or entities in criminal jeopardy for not excluding or barring, certain persons from Stafford Schools premises, including your Plaintiff; further, upon information and belief, in each instance this has occurred, the Defendant School Board has failed to address any aspect of such action, and has failed to remediate or redress the manner and circumstances in which said actions were taken.

63.   In abrogating its explicit and legal authority to fix and control such items, and ceding that authority to

the likes of persons like Karen Duffy, without any due process guarantees or due process accorded, in so doing, the Defendant Stafford School Board has fostered, if not created, an environment ripe to allow such reckless disregard of the constitutional rights of Mr. Rice, as has been described above.

64.  In the face of what are believed to be multiple instances of similar abuse of "no trespass" or premises-barring authority, by various persons, and knowing of the same, and doing nothing about it, the Defendant Stafford School Board, as well as Karen Duffy, have demonstrated deliberate indifference, callousness or reckless disregard of the constitutional rights of Mr. Rice, and possibly others, to their constitutional rights, as well as personal and professional reputations and livelihoods.

65.  No Stafford School Board action has been made known to Rice, either:  (a)  addressing or eliminating his unlawful and debasing debarment from school premises; or (b) to address or correct its apparent practice of abrogating its authority, and condoning arbitrarily and discriminatorily exercised authority taken by various management employees,  or (c) to otherwise address or correct the same unlawful practices as have hurt and damaged, and which continue to hurt and damage, Mr. Rice.

24

In so doing nothing, on a continuous basis, the Stafford School Board has effectively condoned this arbitrary and discriminatory custom, by doing nothing about it.

66.   No further action is required by the Stafford School Board for said exclusion to have been made effective as to Mr. Rice, and he has not been told that any further action of any kind is needed, in order for that action to remain in effect as to him, whether he came to a school selling baseball uniform, or back to a school, on behalf of Scholastic Book Fairs or its competitor, or otherwise as a Stafford resident and father.

67.   The above-referenced conduct violated, and continues to violate, clearly established constitutional rights of Rice, as described above, of which a reasonable person in Defendant Duffy's position, would have been aware.

### Prayer for Relief

WHEREFORE, your plaintiff prays that this Court enter an Order as follows:

(a)   ordering that he shall be reinstated into the employ of Defendant Scholastic Book Fairs, in his former capacity, together with all wages and benefits of said employment lost, from the date his employment was

terminated, as if he had not been terminated, and as if he had not been subject to discrimination and and/or disparate treatment and/or any constitutional deprivation or result of any kind, as described above; and

(b)  issuing an injunction to Defendant Stafford School Board and Karen Duffy, ordering both to dissolve the existing physical and professional barring and debarment of Mr. Rice from the premises and business of Stafford County schools; and

(c)  issuing an appropriate prohibitory injunction restraining the  defendants from continuing to employ procedures and methods of administration and personnel management, and premises access manipulation, pertaining to "no trespass" orders or instructions, as are unlawful as alleged herein, as to the plaintiff and any others similarly situated, as well as those that deprive, or have the effect of depriving, persons of their protected constitutional rights, as well as statutory rights not to be discriminated against based upon their sex, under Title VII; and

(d) rendering a money judgment awarding Plaintiff recovery from defendants a sum of money equal to the monetary value of all wages and benefits of employment lost, (estimated to trial), on account of his unlawful

separation from the employ of Scholastic Book Fairs, less any interim earnings or amounts which could be earned, in suitable employment, with reasonable diligence, in mitigation of said damages, said overall amount to be subject to proof at trial, in an estimated overall amount of one hundred fifty thousand dollars ($150,000.00);

(e)  rendering a money judgment against Defendants representing any and all monetary losses other than wages and benefits of employment, and recoverable economic losses incurred, directly or indirectly, as a result of defendants' above-referenced violations of Title VII and/or 42 U.S.C. § 1983, as applicable;

(f)  in the alternative to the reinstatement back into Defendant's employ prayed for in paragraph (a) of this Prayer for Relief, and absent such reinstatement, a sum of money in the nature of front pay, sufficient to compensate the plaintiff for all future (calculated forward from the date of trial) wages and benefits lost through Defendant's unlawful termination of the plaintiff's employment; and

(g)  awarding a money judgment to plaintiff against defendants, and subject to proof at trial, in the non-economic compensatory damage sum of three hundred fifty thousand dollars ($350,000.00); and

(h)  awarding pre-judgment and post-judgment interest,

as allowable and appropriate, at law, on all amounts otherwise awardable, or awarded, herein; and

(i)  awarding plaintiff's reasonable attorney fees, expert witness fees and costs, and other litigation-related costs incurred in prosecution hereof, pursuant to Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1988; and

(j) awarding such other and further relief as is appropriate to the premises of law, equity and the facts of this case.

### Jury Demand

Your plaintiff hereby demands trial by jury as to all claims for which jury trial is otherwise available at law.

Respectfully submitted,

RICHARD RICE, JR.
By Counsel

Christopher R. Rau
Virginia State Bar No. 34135
Attorney for Plaintiff Richard Rice, Jr.
Law Offices of Christopher R. Rau
200 Little Falls Street, Suite 501
Falls Church, VA  22046
(703) 536-1660 – Telephone
CRRAU@AOL.COM – E-Mail
Counsel for Plaintiff Richard Rice, Jr.

Dated:  February 4, 2020



# ■SCHOLASTIC
## Corrective Action Form

Exhibit #1 to
Complaint

*Before Completing This Form, Please Review the Corrective Action Policy*

| | | | | | |
|---|---|---|---|---|---|
| **Employee Name:** | Richard Rice | **Employee ID:** | 154254 | **Job Title:** | BFFR |
| **Region/Dept/Branch:** | 14 | **Date of Hire:** | 7/27/15 | **Date Issued:** | 1/30/19 |

**To The Employee:**
The purpose of this document is to inform you that your performance or other area(s) of employment have not been satisfactory for the reasons indicated below, and to give you the opportunity to work with your Manager/Supervisor to correct this situation. Failure to correct the situation(s) may result in further corrective action, up to and including termination. Certain behaviors may result in immediate termination.

**Action Taken (mark appropriate box – click on box to mark)**
☐ Verbal Warning   ☐ Written Warning   ☒ Final Written Warning   ☐ Suspension (Optional)

**Reason (mark appropriate box)**
☒ Performance   ☐ Attendance   ☐ Misconduct

**Describe Situation:** *Provide background on the incident or pattern of behavior requiring corrective action. Include date, time and place.* In October 2018, Richard's immediate supervisor, Greg Bail, received a phone call from the Professional Learning Lead for all librarians in Stafford County, VA. The reason for her call was to state that Richard was no longer welcomed in any school in Stafford County. ( Stafford County is part of Richard's sales territory)  During a county-wide meeting of librarians, several voiced their concerns about Richard's approach while visiting their schools.  Specifically, they perceived Richard being too pushy, too car salesman-like, too familiar and personal during conversations and made them feel very uncomfortable. This perceived unprofessional behavior has now caused the company to switch Richard's territory and causes not only a disruption in the business, but potential loss of business by the customer.

This is not the first time that Richard has received similar feedback from schools/customers within his territory.  Richard had been previously coached by his supervisor on what is and is not acceptable.  On one occasion, Richard stated to a Book Fair Chairperson (BFC), while positioning/promoting the "Get Caught Reading" program, that you could even catch students waiting in line for the bathroom and shaking their leg due to the urgency to use the facilities.  Another instance, Richard was banned from a school for by-passing the administrative assistant in order to enter the principal's office and engage him in conversation.  This is a negative trend that cannot be tolerated.  Richard's reputation in many schools is now perceived to be tarnished and, as a result, is causing disruption to the business since Richard is no longer able to cover Stafford County, and therefore will be without a Field Sales Representative.  If this perceived substandard performance continues, it has the potential to negatively impact business results and therefore the inability to grow fair count and revenue, as well as combat stiff competition.

Page 1 of 3

**Performance/Behavior Expectations:** *State the expectations for performance/behavior that were not met in this situation. Attach additional sheet if necessary.*

As an integral member of the Scholastic Book Fairs team, Richard is expected to observe the highest standards of conduct at all times. Richard must interact and communicate with all customers and co-workers in a professional way and remain business like at all times. Richard must follow not only all field sales guidelines, but follow all company policies to include but not limited to the Company Code of Ethics and Workplace Conduct policy.   This policy not only includes adherence to acceptable business principles in matters of personal conduct, but also insists that you demonstrate a sincere respect for the rights and feelings of others.

**Plan for Correction:** *Performance/behavior will be corrected based on the following plan.  Include the consequences for failing to improve performance/behavior. Attach additional sheet if necessary.*

As a member of the Scholastic Book Fairs Field Sales team, Richard is expected to observe the highest standards of conduct at all times and refrain from any behavior that might be perceived as Harmful, disrespectful, intimidating or unprofessional to your co-workers, our guests or customers. This policy not only includes adherence to acceptable business principles in matters of personal conduct, but also Insists that Richard demonstrate a sincere respect for the rights and feelings of others". (Workplace Conduct Policy and Harrassment and Non- Discrimination).  As a member of the Field Sales Team, Richard represents Scholastic with each interaction to a customer or student and is expected to conduct himself in a professional manner at all times.  Richard's interactions should never be perceived as unprofessional when speaking with a customer, guest, co-worker etc.

Failure to follow company policies and procedures to include but not limited to the Company Code of Ethics and Workplace conduct Policy will result in termination of employment.

Is additional documentation attached to this document?   ☐ Yes   ☐ No

Describe what documentation is attached:  Attendance Policy

Once the above sections are completed, please forward to HR Manager for approval before presenting.
This document has been reviewed and approved by HR Manager:

**By signing below, I am acknowledging that I have read and understand this Corrective Action Form, and that this document will be placed in my employee file. I have received a copy of this corrective action.**

Employee Comments (attach additional sheet if necessary):

_____

_____

_____

Employee Signature: _____     Date: _____

Manager Signature: _____     Date: _____

Witness (Optional): _____     Date: _____

Corrective Action Form, Revised 06/27/2017

Page 2 of 3

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**DISMISSAL AND NOTICE OF RIGHTS**

Exhibit #2
to Complaint

To:   Richard Rice, Jr.
       437 White Oak Rd
       Fredericksburg, VA 22405

From:   Washington Field Office
           131 M Street, N.E.
           Suite 4NW02F
           Washington, DC 20507

On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 524-2020-00261 | Mark Young, Intake Supervisor | (202) 419-0719 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other (briefly state)

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

for Mindy E. Weinstein,
Acting Director

NOV 14 2019
*(Date Mailed)*

Enclosures(s)

cc:   Scholastic Book Fairs
        Donna Mililio
        human resources
        2540 US Hwy 130N, Suite 105
        Cranbury, NJ 08512

Enclosure with EEOC
Form 161 (11/16)

**INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC**

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you **receive** this Notice. Therefore, you should **keep a record of this date.** Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than** **2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
**before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do **not** relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, please **make your review request** **within 6 months** of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*