IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RICHARD RICE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case 1:20-cv-01293 (RDA/TCB) |
| | ) | |
| SCHOLASTIC BOOK FAIRS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Stafford County School Board ("SCSB") and Karen Duffy's ("Duffy") Motion to Dismiss, Dkt. 5, and Defendant Scholastic Book Fairs, Inc.'s ("Scholastic" and together with SCSB and Duffy, "Defendants") Partial Motion to Dismiss.  Dkt. 15.  Considering the Motions together with their Memorandums in Support (Dkt. Nos. 6; 16); Plaintiff Richard Rice, Jr.'s ("Plaintiff") Memorandums in Opposition (Dkt. Nos. 8; 19); as well as Defendants' Reply Briefs in Further Support of their Motions (Dkt. Nos. 9; 20), it is hereby ORDERED that Defendants' Motions are GRANTED in part and DENIED in part.

## I.  BACKGROUND[1]

Plaintiff alleges two claims against Defendants.  Against only Defendant Scholastic Book Fairs, Plaintiff alleges a claim for disparate treatment on the basis of his gender, in violation of Title VII of the Civil Rights Act of 1964 (Count I).  Dkt. 1-1 at 15.  Against all of the Defendants, Plaintiff alleges claims under 42 U.S.C. §§ 1983 and 1986 for violating Plaintiff's First Amendment and Fourteenth Amendment Equal Protection rights (Count II).  *Id.* at 21.

---

[1]  For purposes of considering the Motions, the Court accepts all facts contained within the Complaint as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

On or about July 27, 2015, Plaintiff alleges that he was employed as a Book Fair Field Representative for Scholastic.  *Id.* ¶ 13.  In his capacity as a Book Fair Field Representative for Scholastic, Plaintiff worked with Stafford County Public Schools librarians, who were employees of SCSB.  *Id.* ¶ 23.  According to Plaintiff, the individuals with whom he worked—both SCSB librarians and Scholastic employees—were "overwhelmingly female."  *Id.* ¶¶ 16, 28.

In or about late August or early September of 2018, Plaintiff was assigned a new manager, Greg Ball ("Ball").  *Id.* ¶ 16.  Plaintiff alleges that Ball took an immediate dislike to him, criticizing his choice of clothes and facial hair style.  *Id.* ¶ 17.  According to Plaintiff, Ball also instructed Plaintiff that "it was not appropriate or 'ok'" for Plaintiff to "shake hands with, touch, much less hug, a given Library or Assistant Librarian," without maintaining, stating or enforcing such a restriction on Plaintiff's female colleagues.  *Id.* ¶18.  Plaintiff believes that Ball disliked him and criticized him because Plaintiff is a heterosexual male, whereas Plaintiff believes Ball is a homosexual male.  *Id.* ¶¶ 16, 28.

Plaintiff alleges that in October of 2018, Defendant Duffy, then Defendant SCSB's Professional Learning and Instructional Design Lead, informed Ball by telephone that Plaintiff was "no longer welcomed in any school in Stafford County."  *Id.* at 30.  Plaintiff also alleges that Duffy concocted a false narrative of the occurrence of a county-wide meeting in which she claimed that several librarians had voiced concerns about Plaintiff's behavior when visiting schools.  *Id.* ¶¶ 23, 49.  Specifically, librarians were concerned that Plaintiff was "too pushy, too car salesman-like, too familiar and personal during conversations[,] and made them feel very uncomfortable."  *Id.* at 30.  In or about November of 2018, Ball telephoned Plaintiff and told him that Plaintiff was forbidden from entering any Stafford County school "for purposes of work, soliciting business, or otherwise, until further notice."  *Id.* ¶ 19.  On January 30, 2019, Ball filed a Corrective Action

Form with Scholastic, detailing Ball's conversation with Defendant Duffy, and provided Plaintiff a copy. *Id.* at 30-31. The form indicated that Plaintiff had been relocated to a different "territory." *Id.* at 30.

At some point after being banned from Stafford County schools, Plaintiff was reassigned to Prince William County schools. *Id.* ¶ 34. On or about November 6, 2019, Scholastic terminated Plaintiff's employment, citing the circumstances described in the January 30, 2019 form as well as a more recent complaint "of a similar nature" from a female librarian in a Prince William County school. *Id.* According to Plaintiff, Scholastic refused to provide any further information about the Prince William County complaint. *Id.* Around December of 2019, Plaintiff "orally petitioned" SCSB at a school board meeting in an effort to "achieve the dissolution or withdrawal of his debarment from" SCSB's facilities. *Id.* ¶ 61. Plaintiff alleges that no "meaningful statement or action" was taken as a result of his petition. *Id.*

Plaintiff alleges that the meeting of librarians never happened and that other reports of complaints in the January 30, 2019 form were either falsified or completely fabricated, as were those complaints made after the form was filed. *Id.* ¶¶ 32, 42, 49. Plaintiff also alleges that genuine complaints about similar behavior were ignored when made against female employees, specifically Sarah Smith. *Id.* ¶¶ 29-31. Moreover, according to Plaintiff, no female employee has been barred by SCSB or Scholastic from SCSB schools. *Id.* ¶ 33. Plaintiff also believes that no other female SCSB or Scholastic employee has been "discipline[d] or fire[d,]" in the manner in which Plaintiff was disciplined and terminated. *Id.*

After filing a charge of discrimination against Defendant Scholastic with the United States Equal Employment Opportunity Commission ("EEOC"), Plaintiff received his right to sue letter.

Dkt. 1-1 at 32-33.  Plaintiff subsequently filed his Complaint in the Stafford County Circuit Court on February 4, 2020.  *See id.*

This matter was removed to the Court from the Circuit Court for the County of Stafford on November 2, 2020.  Dkt. 1.  On November 12, 2020, SCSB and Duffy filed their Motion.  Dkt. Nos. 5; 6.  On December 3, 2020, Scholastic moved to partially dismiss the Complaint.  Dkt. 16.  Plaintiff opposes both Motions.  Dkt. Nos. 8; 19.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal when the plaintiff has failed to state a claim for which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face."  *Twombly*, 550 U.S. 544, 570 (2007).  Two principles govern the application of the *Twombly* pleading standard.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id* at 679.  A plaintiff has failed to state a claim where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  *Id.*

## III.  ANALYSIS

In his Complaint, Plaintiff sets forth two counts for relief.  Dkt. 1-1 at 15, 18.

Neither of the pending Motions seek to dismiss Count One and thus the Court will not address the sufficiency of the pleadings as to that Count.  Dkt. Nos. 6; 16.

In Count Two of the Complaint, Plaintiff alleges that all Defendants violated 42 U.S.C. §§ 1983, 1986, and his "constitutional rights." Dkt. 1-1, ¶¶ 46-67. More specifically, Plaintiff asserts that all Defendants violated his First Amendment Right to free speech (*see*, *e.g.*, *id*. ¶ 47); his Fourteenth Amendment right to equal protection (*see*, *e.g.*, *id*. ¶ 48); and his substantive and procedural due process rights under the Fourteenth Amendment (*see*, *e.g.*, *id*. ¶ 51). Though not entirely clear, it seems that Plaintiff's theory is that not only did Defendants violate these rights from a constitutional perspective, but that in addition, each Defendant has also violated 42 U.S.C. §§ 1983 and 1986. *See*, *e.g.*, *id*. ¶ 56. Stated differently, it seems that Plaintiff uses §§ 1983 and 1986 as conduits for his constitutional claims, but Plaintiff also alleges that Defendants violated his constitutional rights, notwithstanding §§ 1983 and 1986. Analytically, Plaintiff fails to state a cause of action predicated upon 42 U.S.C. §§ 1983 and 1986, making a dismissal of both claims sufficient for dismissal of his constitutional claims.

Though advancing two separate motions, each of the Defendants maintain that Plaintiff has failed to plead sufficient facts in support of the claims set forth in Count Two. *See generally* Dkt. Nos. 6; 16.[2]

---

[2] In his Complaint, Plaintiff alleges that "Defendants[ ]"—thereby suggesting *all* Defendants— "infringed upon [ ] [his] substantive and procedural due process rights under the [ ] [Fourteenth Amendment] [ ] [to] the [ ] [United States] Constitution, both relating to his property interest in his employment, as well as his personal and professional reputation." Dkt. 1-1, ¶ 51. In his Opposition to SCSB and Duffy's Motion, Plaintiff substantially expounds upon his substantive due process claim by urging that Defendants also violated Plaintiff's right to "association, commercial speech, and intimate rights relating to the education and upbringing of [ ] [Plaintiff's] minor child, as well as the right to be free from unlawful search and seizure under the Fourth Amendment [ ] [to] the [ ] [United States] Constitution." Dkt. 8 at 10. To be sure, at this stage in litigation the Court is tasked with evaluating the sufficiency of the allegations alleged within the Complaint. "[B]ut it is [ ] 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (quoting *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)).

A.   Scholastic's Motion

Scholastic claims that it is immune to Plaintiff's § 1983 claim because it is a private entity. Dkt. 16 at 6-11.  Plaintiff responds in his Opposition to Scholastic's Motion by providing four categories of cases where courts have found it fair to treat private entities as state actors and seeks to include the instant case in all of those categories.  Dkt. 19 at 5-12.  For the reasons stated below, this Court finds that Plaintiff has not pleaded facts sufficient for a finding that Scholastic may be fairly treated as the state.

Scholastic also maintains that Plaintiff's § 1985 claim fails because he did not cite § 1985 in his Complaint and because he has failed to meet the high pleading standards required by § 1985. Dkt. 16 at 12-14.  For the reasons stated below, this Court agrees.

    i.  Whether Plaintiff Has Pleaded Sufficient Facts in Support of a § 1983 Claim Against Scholastic

At first glance, Plaintiff's constitutional claims against Scholastic fail simply because Plaintiff is a private entity.  *See Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) ("The Fourteenth Amendment . . . applies to acts of the states, not to acts of private persons or entities."); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 817 n.5 (4th Cir. 2004) ("[T]he First Amendment does not apply to private employers.").  Plaintiff concedes in his Complaint and Opposition to Scholastic's Motion that Scholastic is a private entity.  *See* Dkt. Nos. 1-1, ¶ 4; 19 at 7.  However, Plaintiff contends that Scholastic may be fairly treated as a state actor because its actions place it squarely within several categories of cases where courts have held private entities liable for constitutional violations.  *See* Dkt. 19 at 6-11.  Although these arguments do not appear in the Complaint they fail on their merits as well.  *Compare* Dkt. 1-1 *with* Dkt. 19 at 6-11.

    *a.  Plaintiff has not pleaded facts sufficient for a finding that there is a sufficiently close nexus between Scholastic's actions and the state*

6

To be sure, courts have held private entities liable for constitutional violations where there has been a sufficiently close nexus between the challenged action of that private entity and the actual state.  *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974).[3]  However, even in *Jackson*, the complaint did not survive where the private entity at issue was a heavily regulated utility company with a partial monopoly, because there was not a sufficiently close nexus between the state and the company's decision to terminate a customer's electricity.  *Id.* at 351-57.

The private action at issue here is Scholastic's termination of Plaintiff.[4]  According to the Complaint, Ball's decision to terminate Plaintiff came over eleven months after SCSB issued the no-trespass order.  *See* Dkt. 1-1, ¶¶ 19, 34.  This significant gap in time between the termination of Plaintiff and the no-trespass order, standing alone, establishes the absence of a *close* nexus between the challenged conduct and the actual involvement of the state.  Plaintiff does not allege

---

[3]  Though the constitutional claim at issue in *Jackson* was an alleged violation of the Fourteenth Amendment, conduct satisfying the state action requirement of the Fourteenth Amendment also satisfies § 1983's requirement of action under color of state law.  *See Brentwood Academy v. Tennessee Secondary Schools Athletic Ass'n*, 531 U.S. 288, 295 n.2 (2001) ("If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action under color of state law for § 1983 purposes." (internal quotation marks omitted)); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982) (finding that conduct satisfying the state action requirement of the Fourteenth Amendment is a sufficient to find conduct satisfying the requirements of § 1983).

[4]  Plaintiff does not allege that Scholastic issued the no-trespass order.  *See* Dkt. 1-1.  Plaintiff also does not allege that his transfer to a nearby county, in light of his ban from Stafford County Schools, was itself a violation of his constitutional rights.  *See id.*  The allegation that Ball conspired with Duffy is not here assumed because it is a bare legal conclusion.  *See supra*, note 2.  The allegation that Ball falsified complaints in an unspecific manner is only relevant insofar as it led to Plaintiff's termination, which was potentially a violation of rights.  Were Ball to have simply made up complaints and done nothing with them, there would be no allegation of a rights violation.  Moreover, in the absence of the conspiracy claim, the falsification of complaints is completely unrelated to state action.  Plaintiff merely alleges that Ball informed him that he had been banned by SCSB.  *See id.*  If the no-trespass order was a deprivation of rights, Plaintiff's rights were deprived as soon as the order was issued, and Plaintiff lost no further right by merely being informed of that deprivation by Ball.

that Scholastic predicated its decision to terminate on any other action of SCSB or Duffy.  *See* Dkt. 1-1.  Though Plaintiff does allege that the complaint grounding his termination and arising out of Prince William County conduct was falsified in an unspecified manner, he does not specify who falsified them.  *See* Dkt. 1-1, ¶ 34.  If Ball, a private actor, falsified the final report, there is no further state action to consider than if the report were genuine.  If Duffy or a librarian of Prince William County falsified a single report, that would not come close to mirroring the close nexus in the "extensive state regulation" the Supreme Court found in *Jackson*.  *Jackson*, 419 U.S. at 350; *see also Brentwood*, 531 U.S. at 289 (finding sufficiently close nexus only because "private" association was 84% *composed* of public schools); *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988) (finding insufficiently close nexus where state punished employee in compliance with guidelines of a private entity); *Blum v. Yaretsky*, 457 U.S. 991 (1982) (finding insufficiently close nexus where the state lowered Medicaid benefits for individual patients based on the findings of a private reviewer).

Moreover, the facts pleaded in the Complaint do not present a plausible basis for sufficiently close coordination between SCSB and Scholastic.  That Scholastic reassigned Plaintiff to a new school district rather than terminate his employment altogether when SCSB issued its no-trespass order indicates that the interests between the parties were not coexistent.

     *b.  Plaintiff has not pleaded facts sufficient for a finding that the state created the legal framework governing the conduct of Scholastic*

Courts have also held private entities liable for constitutional violations where the state has created the legal framework governing the challenged action of the private entity.  *Tarkanian*, 488 U.S. at 192 (citing *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975)).  However, as described *supra*, the action of Scholastic's at issue here is Plaintiff's termination.  Plaintiff fails to allege any facts that could give rise to an inference that (a) Scholastic had no legal

framework for such a termination prior to an action of SCSB or Duffy or (b) Scholastic overhauled its legal framework at the sole behest of SCSB or Duffy. *See* Dkt. 1-1.

c. *Plaintiff has not pleaded facts sufficient for a finding that Scholastic cooperated with the state in terminating Plaintiff*

Courts have also held private entities liable for constitutional violations in three similar situations: (1) where a private entity has acted with the help of, or in concert with, state officials, *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994); (2) where the state provided significant encouragement, either covert or overt, for the action taken by a private entity, *Brentwood*, 531 U.S. at 296 (quoting *Blum*, 457 U.S. at 1004); and (3) where the state delegated its authority to a private entity, *Brentwood*, 531 U.S. at 296 (citing *West v. Atkins*, 487 U.S. 42 (1988)). For the reasons discussed above, Plaintiff is not entitled to the assumption that Duffy and Ball conspired to ban or terminate him. *Supra*, note 2. No other factual allegations attempt to support an inference that Scholastic acted with the help of or in concert with the state or that the state delegated its authority to Scholastic. *See* Dkt. 1-1. There is no allegation of cooperation in the Complaint other than the conclusory language suggesting conspiracy to violate § 1983. *See id.*

While Plaintiff alleges, for the first time in his Opposition to Scholastic's Motion, that the state encouraged Ball to terminate Plaintiff by issuing the no-trespass ban, the allegation relies on the mere issuance of the no-trespass ban. Dkt. 19 at 9. Plaintiff's categorization of the alleged no-trespass order as "encouragement" is a mere legal conclusion and is not entitled to assumption. *See Twombly*, 550 at 555.

Plaintiff also maintains that Duffy delegated to Ball her due process duty to issue the no-trespass order to Plaintiff. Dkt. 19 at 10. Plaintiff makes this categorization in an attempt to apply a rule stated (but not applied) in *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214

(4th Cir. 1993). *See* Dkt. 19 at 10.  In *Andrews*, the court held that a private entity may incur liability for rights violations made when the government has "compelled the act of which [Plaintiff] complains." *See Andrews*, 998 F.2d at 217-18.  Plaintiff does not allege that Ball violated Plaintiff's rights when notifying Plaintiff that a no-trespass order had already been issued, and so *Andrews* does not apply. *See id.*; Dkt. 1-1.

> ### d. Plaintiff has not pleaded facts sufficient for a finding that the state knowingly accepted benefits derived from the unconstitutional behavior of Scholastic

To be sure, courts have held private entities liable for constitutional violations where the state knowingly accepted benefits derived from the unconstitutional behavior of a private entity. *Tarkanian*, 488 U.S. at 192 (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961)). Plaintiff alleges that Duffy accepted the benefits of Plaintiff's exclusion and his replacement by a female employee.  Dkt. 19 at 11.  However, Plaintiff never alleges in his Complaint that his replacement was female and fails to allege it as a fact in his Opposition to Scholastic's Motion, merely stating that it can be inferred from Duffy's alleged discriminatory animus. *Id.* Nevertheless, *Burton* does not apply here for the same reason it did not apply in *Tarkanian*: "[i]n the case before us the state and private parties' relevant interests do not coincide, as they did in *Burton*; rather, they have clashed." *Tarkanian*, 488 U.S. at 196.  Scholastic's interests were not served by the banning of its representative from an entire school district, the likely costly and inconvenient reassignment of that representative to a new territory, or the loss of that representative altogether—whose termination did not relate to his ability to generate profit for his employer. Moreover, Scholastic's reluctance to transfer or terminate Plaintiff in the face of similar complaints prior to the no-trespass order indicates a clashing of interests between it and SCSB. *See* Dkt. 1-1 at 30.

> ### ii. Whether Plaintiff Has Pleaded Sufficient Facts in Support of a § 1985 Claim Against Scholastic

Plaintiff has failed to state a claim under 42 U.S.C. § 1985 because no reference to the statute appears in the Complaint.  Dkt. 1-1.  In his Complaint, Plaintiff mistakenly cited to 42 U.S.C. *§ 1986.  See* Dkt. 1-1, ¶ 56 ("[D]efendants . . . *conspired* to violate 42 U.S.C. § 1983, and thusly also violated 42 U.S.C. § *1986* . . . .") (emphasis added).  Plaintiff clarified in his Opposition to SCSB and Duffy's Motion that Count II of the Complaint seeks relief under § 1985 rather than § 1986, though he does not concede his failure to state either claim in his Complaint.  Dkt. 8 at 16. Ultimately, however, Plaintiff did not cite 42 U.S.C. § 1985 anywhere in his Complaint and, as a matter of form, therefore cannot plead it by citing it in his Opposition to Scholastic's Motion.  *See supra*, note 1.

Even if Plaintiff had cited 42 U.S.C. § 1985, he would have failed to state a claim under the high pleading standards of § 1985.  42 U.S.C. § 1985(3) states:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  Additionally,

> [t]he law is well settled that to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) [*sic*] and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985)).  "Moreover, the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the

claimant's constitutional rights." *Id.* at 1377. "Because of the high threshold that a Plaintiff must meet to establish a prima facie case under section 1985, courts often grant motions of dismissal." *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995), *aff'd*, 87 F.3d 1308 (4th Cir. 1996) (citing *Simmons*, 47 F.3d at 1377). "Indeed, we have specifically rejected 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d at 1377.

By merely stating that Ball and Duffy agreed to violate his constitutional rights, the lack of specificity in Plaintiff's Complaint cannot survive the *Simmons or Davis* standards. *See Simmons*, 47 F.3d at 1370; *Davis*, 896 F. Supp. at 561; Dkt. 1-1, ¶ 56. Indeed, it is unclear from the Complaint whether the concrete object of the conspiracy was to terminate Plaintiff, ban him from the school, publicly embarrass him, or something else. *See* Dkt. 1-1. It is also unclear if the actions taken in furtherance of the conspiracy were to modify benign complaints, solicit frivolous complaints, or completely fabricate complaints against Plaintiff. *See id.* Ultimately, insofar as Plaintiff's allegations can be read to be more than mere legal conclusions, they do not contain sufficient specificity under the exceptionally high pleading standard of 42 U.S.C. § 1985.[5] *See Simmons*, 47 F.3d at 1377; *Davis*, 896 F. Supp. at 571.

---

[5] Though Plaintiff's factual allegations are not sufficient for a claim under the high bar of 42 U.S.C. § 1985, the Court does not dismiss them all as mere legal conclusions. Much like the allegation of conspiracy in *Twombly*, Plaintiff's allegation of conspiracy to violate his constitutional rights is a mere legal conclusion or "threadbare recital" of the elements of the cause of action given by 42 U.S.C. § 1985(3). *Twombly*, 550 at 555; *see also Davis* 896 F. Supp. at 571 ("Plaintiff has made general conclusory allegations that Defendants conspired [to violate § 1983] but has failed to provide specific evidence of such a conspiracy."); Dkt. 1-1, ¶ 56. Therefore, the Court is not obligated to assume that the conspiracy occurred in considering Defendants' Motions. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). However, the allegation that Duffy falsified complaints, including the meeting of librarians, is well-pleaded, factual in nature, and nonconclusory. Dkt. 1-1, ¶¶ 32, 49. Therefore, Plaintiff is entitled to the assumption that those events occurred for purposes of Defendants' Motions. *Iqbal*, 556 U.S. at 681 ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. [I]t is the

iii.   Whether Plaintiff Has Pleaded Sufficient Facts in Support of a § 1986 Claim Against
Scholastic

As Plaintiff has no claim under § 1985, he also has no claim under § 1986. *See Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985 . . . .  Having affirmed the dismissal of plaintiff's § 1985 claim, we also affirm the dismissal of his § 1986 claim.").

### B.   SCSB and Duffy's Motion

SCSB and Duffy argue that Plaintiff's 42 U.S.C. § 1983 claim fails against SCSB because it is immune from liability as a municipality. Dkt. 6 at 5-9.  Additionally, SCSB and Duffy argue, Plaintiff's § 1983 claim fails against Duffy because she is protected by the doctrine of qualified immunity. *Id.* at 20-22.  This Court agrees that the § 1983 claim fails against SCSB but finds a cognizable basis for the § 1983 claim against Duffy.

SCSB and Duffy also argue that Plaintiff's 42 U.S.C. § 1983 claim fails against all parties because of its underlying constitutional rights violation claims. *Id.* at 9-20.  This Court disagrees.

Additionally, SCSB and Duffy argue that Plaintiff failed to state a claim under 42 U.S.C. § 1985 because he failed to cite § 1985 in his Complaint and because he failed to meet the high pleading standard of § 1985. *Id.* at 17-18.  This Court agrees.

SCSB and Duffy further argue that Plaintiff has failed to state a claim under 42 U.S.C. § 1986 against SCSB because his claim is time-barred and because he failed to allege that SCSB had knowledge of a conspiracy to violate constitutional rights. *Id.* at 19-20.  This Court agrees with SCSB and Duffy's conclusion.

---

conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.")

Lastly, SCSB and Duffy take issue with Plaintiff's requested remedies. *Id.* at 22-25. First, SCSB and Duffy argue that Plaintiff's request for damages is not sufficiently specific. *Id.* at 22-23. Second, SCSB and Duffy argue that (1) Plaintiff does not have the standing required for his requested injunctive relief and (2) an adequate remedy at law is available. *Id.* at 23-25. This Court disagrees and finds plausible factual grounds for each of the categories of monetary relief requested by Plaintiff as well as for injunctive relief, but with some qualifications.

i.  Whether Plaintiff Has Alleged Sufficient Facts in Support of a § 1983 Claim Against SCSB

Plaintiff seeks to hold SCSB liable for the actions of Duffy and alleges no further constitutional violation by SCSB. *See* Dkt. 1-1. However, municipalities enjoy immunity from liability for injuries inflicted solely by their employees and agents. *Monell v. Dep't. of Soc. Servs.*, 426 U.S. 658, 694 (1978); *Hunter v. Town of Mocksville*, 897 F.2d 553-54 (4th Cir. 2018) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). A municipality can only be held liable for action taken pursuant to an official policy or custom. *Hunter*, 897 F.2d at 554. "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *J.S. v. Thorsen*, 766 F. Supp. 2d 695, 703 (E.D. Va. 2011).

School boards are municipalities under § 1983 analysis. *See id.* Plaintiff does not allege any official, stated policy of SCSB. *See* Dkt. 1-1. Rather, Plaintiff contends that liability can be found because SCSB had a custom of using no-trespass orders to discriminate against males and because Duffy had final policymaking authority. Dkt. 8 at 19-21. Although neither argument appears in the Complaint, they fail on their merits as well for the following reasons. *Compare* Dkt. 1-1 *with* Dkt. 8, 19-21.

14

a.  *Plaintiff has not alleged facts sufficient to find that SCSB has a custom of using no-trespass orders to discriminate against males that is widespread, pervasive, permanent, and well-settled*

In textbook conclusory fashion, Plaintiff claims that past SCSB practices evidence a custom of using no-trespass orders to discriminate against males that was so widespread, pervasive, permanent, and well-settled, as to constitute a custom or usage with the force of law. Dkt. 8 at 19.  In so arguing, Plaintiff cites *Greensboro Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 966 (4th Cir. 1995) and *City of St. Louis v. Praprotnik*, 285 U.S. 112, 123 (1988).  Dkt. 8 at 19.  Plaintiff correctly cites the rule from *Greensboro* and *Praprotnik*; however, in both cases, no such custom was found.  *Greensboro*, 64 F.3d at 966-67 (finding no such custom because "evidence of anti-union animus on the part of two high-level officials does not prove that *the City* condoned such behavior, or even knew of it"); *Praprotnik*, 285 U.S. at 128 (finding no such custom because allegations said "nothing about the actions of those whom the law established as the makers of municipal policy in matters of personnel administration").

Similarly, Plaintiff does not allege in his Complaint that SCSB "even knew of" the no-trespass order, nonetheless that SCSB condoned any discriminatory animus behind it.  *Greensboro*, 64 F.3d at 966-67; Dkt. 1-1.  Moreover, Plaintiff admits in his Opposition to SCSB and Duffy's Motion that the no-trespass order's "existence was made known to the Board, by [Plaintiff][,]" at the board meeting he attended.  Dkt. 8 at 13.

b.  *Plaintiff has not alleged facts sufficient to find that Duffy acted with final policymaking authority when issuing the no-trespass order*

Plaintiff alleges that Duffy acted with final policymaking authority when issuing the no-trespass order.  Dkt. 8 at 19-21.  To hold SCSB liable for an isolated action of Duffy's, Plaintiff must show that Duffy had final policymaking authority with respect to that action.  *Greensboro*, 64 F.3d at 964-65.  Whether an individual possesses final policymaking authority is a question of state law. *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000).  However,

Plaintiff points to no "legal materials, including state and local positive law" supporting his legal conclusion that Duffy had final policymaking authority with respect to the no-trespass order. *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 291 U.S. 701, 737 (1989)); *see* Dkt. 1-1. The fact that Duffy had the authority to make the decision to issue the no-trespass order is not sufficient to find final policymaking authority. *Greensboro*, 64 F.3d at 964-65 (finding that even *final* decision making authority is not sufficient for final policymaking authority). Plaintiff also mistakenly relies on *Hunter*. *See* Dkt. 8 at 21. *Hunter* did reverse the dismissal of claims after finding a police chief did indeed hold final policymaking authority, but its reasoning was specific to North Carolina law and the express statements of the municipality at issue in that case, which is simply not the case here. *Hunter*, 897 F.3d 560. Unable to cite to any similar *Virginia* precedent, Plaintiff has failed to allege the necessary factual basis to assert his claims on this score.

ii.   Whether Plaintiff Has Pleaded Sufficient Facts in Support of a § 1983 Claim Against Duffy

SCSB and Duffy also argue that Plaintiff has failed to state a claim against Duffy under 42 U.S.C. § 1983. Dkt. 6 at 9-22. 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. It is hornbook law that Section 1983 "is not itself a source of substantive rights," but merely provides a cause of action for the violation of federal rights given by other sources, including the Constitution. *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979). The sources of Plaintiff's rights allegedly violated by Duffy, however, are rooted in the First and Fourteenth Amendments. Dkt. Nos. 1-1, ¶¶ 46-67; 8 at 5-12. SCSB and Duffy's Motion makes several

arguments against the underlying constitutional claims made by Plaintiff.  Dkt. 6 at 9-20.  This Court disagrees.

SCSB and Duffy also argue that Plaintiff fails to state a claim against Duffy under 42 U.S.C. § 1983 because Duffy is protected by the doctrine of qualified immunity.  Dkt. 6 at 20-22. This Court disagrees.

### a.  First Amendment

SCSB and Duffy argue in their Motion to Dismiss that Plaintiff's First Amendment right to freedom of commercial speech was not violated because he was speaking on behalf of Scholastic when he was banned.  Dkt. 6 at 10.  SCSB and Duffy cite no authority for this argument.  *See generally id.*  The Court understands SCSB and Duffy to suggest that Scholastic's commercial speech was not burdened because *Scholastic* was not named in the ban, and that Plaintiff had no independent right to commercial speech because he was a representative of Scholastic.  *See id.* ("There are no allegations that SCSB or Ms. Duffy banned *Scholastic* from the property, that they banned *Scholastic* from selling or acting as a vendor on the property, or that they passed any sort of policy with respect to any vendor's commercial speech." (emphasis added)).  However, the fact remains that Plaintiff may no longer solicit the business of the school as he did before.  If that prerogative is included in his right to commercial speech, it matters not that at one point in time he used that ability to solicit business on behalf of a vendor.  SCSB and Duffy's argument is simply irrelevant to Plaintiff's commercial speech claim and without precedential support.

SCSB and Duffy also argue that Plaintiff's First Amendment rights could not have been violated because the no-trespass order has not been entirely enforced against him, as evidenced by Plaintiff's admission that he attended an SCSB meeting on SCSB property.  Dkt. 6 at 10.  Again,

no authority is cited for this argument. *See id.* This Court will not insulate alleged constitutional violations on the grounds that such rights have been inconsistently restricted.

Lastly, SCSB and Duffy argue that any burden on Plaintiff's First Amendment rights would pass intermediate scrutiny. Citing *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999), they argue that the no-trespass order was sufficiently drawn to serve the substantial interests of protecting students and school personnel and to fulfill the responsibility to require third parties to conduct themselves properly on SCSB property. Dkt. 6 at 9-11. Once again, this Court is required to assume that Duffy falsified all complaints made against Plaintiff. *See supra*, note 2. A no-trespass order on the basis of false complaints could not serve the interests of safety across public schools in the county and meet SCSB's responsibility of "assuring that parents and third parties conduct themselves appropriately while on school property." *Lovern*, 190 F.3d . at 655.

### b. Equal Protection

SCSB and Duffy argue that Plaintiff's Complaint fails to state a claim for a violation of Plaintiff's Fourteenth Amendment right to equal protection of the laws because he fails to specify instances in which similarly situated females were treated differently. Dkt. 6 at 12. SCSB and Duffy disregard Plaintiff's specification of one such female, Sarah Smith, because he fails to specify the particular conduct of Smith. Dkt. 6 at 12. However, Plaintiff's allegation concerning Smith is not a legal conclusion, and so it is entitled to an assumption of truth when evaluating a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

### c. Substantive Due Process

SCSB and Duffy argue that Plaintiff's Complaint fails to state a claim for a violation of Plaintiff's Fourteenth Amendment right to due process. Dkt. 6 at 13-14. SCSB and Duffy argue that there is no fundamental interest in continued employment or professional reputation and so

Plaintiff's substantive due process rights were not violated if either interest was frustrated.  Dkt. 6 at 14.  However, Plaintiff alleges other interests in the same paragraph as his allegation of due process violation, including his right to "monitor and guide the education of his son" and his right to vote at any SCSB property to be used as a polling center.  Dkt. 1-1, ¶ 53.  These interests are not addressed by SCSB and Duffy's Motion.  *See* Dkt. 6.  Based on the Complaint, this Court sees no basis for denying Plaintiff's right to raise a Substantive Due Process claim.

### d.  Procedural Due Process

SCSB and Duffy also seek to dismiss Plaintiff's procedural due process claim on the grounds that he was not deprived of a property interest in employment because he did not have an employment contract.  Dkt. 6 at 15.  Again, SCSB and Duffy cite no authority for the proposition that an employment contract is a prerequisite to a deprivation of property interest in employment without due process of law.  *See id.*  Accordingly, this Court will not dismiss Plaintiff's procedural due process claim on this basis.

SCSB and Duffy next seek to dismiss Plaintiff's Procedural Due Process claim arising out of the deprivation of a property interest in personal and professional reputation.  Dkt. 6 at 16.  They argue that Plaintiff can make no such claim because he has no government employer, citing *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 501 (4th Cir. 2018), and because Plaintiff fails to allege reputational harm in his Complaint.  Dkt. 6 at 16.  SCSB and Duffy mistakenly rely on *Cannon*, as the rule they quote applies only to governmental employees suing their employers. *Cannon*, 891 F.3d at 501 ("There are two components to a claim that a *governmental employer* violated a former employee's Fourteenth Amendment rights by publicly disclosing the reasons for the employee's discharge . . . .").  Such a rule does not extend to all procedural due process claims. Lastly, Plaintiff does in fact allege reputational injury in his Complaint, laying the groundwork for

his Procedural Due Process claim. Dkt. 1-1, ¶ 58 ("Rice has . . . suffered reputational harm."). Plaintiff has pleaded facts that "plausibly suggest an entitlement to relief" under the Due Process Clause of the Fourteenth Amendment. *Iqbal*, 556 U.S. at 681.

### e. Qualified Immunity

SCSB and Duffy maintain that Duffy is protected from Plaintiff's constitutional claims under the doctrine of qualified immunity. Dkt. 6 at 20-22. The doctrine of qualified immunity protects government officials like Duffy "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Additionally, this Court in *Raub v. Brown* noted that "a defendant can raise . . . qualified-immunity . . . at both the motion to dismiss and summary judgment stage . . . [s]o long as qualified immunity does not turn on disputed facts . . . ." 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013).

SCSB and Duffy argue that Duffy engaged in nothing more than the conveyance of genuine complaints to a vendor, and therefore did nothing a reasonable person would know to violate the Constitution. Dkt. 6 at 22. This claim is completely inconsistent with the factual and nonconclusory allegations in Plaintiff's Complaint that Duffy falsified the complaints and issued the no-trespass order. *See* Dkt. 1-1. If these allegations are true, as the Court must assume when considering a motion to dismiss, it is plausible that a reasonable person would know those actions to violate the Constitution. *See Pearson*, 555 U.S. at 231; *Twombly*, 550 at 555. Accordingly, Plaintiff's complaint survives a defense of qualified immunity.

iii. Whether Plaintiff Has Pleaded Sufficient Facts in Support of a §§ 1985 or 1986 Claim

20

SCSB and Duffy's arguments against Plaintiff's §§ 1985 and 1986 claims are fully addressed by the analysis of Scholastic's arguments against those same claims given above.  *See supra,* Section A.ii-iii.  As such, the Court adopts that analysis as to SCSB and Duffy's Motion, and so Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims against SCSB and Duffy are dismissed.

### iv.  Remedies

SCSB and Duffy argue that Plaintiff has failed to adequately request remedies for his claims.  *Id.* at 22-25.  First, SCSB and Duffy argue that Plaintiff's request for damages is not sufficiently specific.  *Id.* at 22-23.  Second, SCSB and Duffy argue that (1) Plaintiff does not have the standing required for his requested injunctive relief and (2) an adequate remedy at law is available.  *Id.* at 23-25.

### a.  Damages

As to monetary relief, SCSB and Duffy argue that Plaintiff's request for damages is not sufficiently specific.  *Id.* at 22-23.  In doing so, SCSB and Duffy cite to no authority requiring specificity beyond that present in Plaintiff's Complaint.  *See id.*  There is no authority requiring specific dollar amounts of direct damages be pleaded in the Complaint beyond the requirement of Federal Rule of Civil Procedure 9(g) for special damages and Federal Rule of Civil Procedure 54(c) for relief available on default, neither of which are at issue here.

SCSB and Duffy also argue that Plaintiff failed to demonstrate how the alleged actions of SCSB and Duffy proximately caused the injuries for which Plaintiff seeks monetary relief.  Dkt. 6 at 23.  From their vantage point, Scholastic's termination of Plaintiff rather than the issuance of a "no-trespass order" proximately caused Plaintiff's injuries.  However, for the reasons stated *supra*, this Court must take Plaintiff's allegations of falsified complaints by Duffy as true for the purposes of evaluating grounds for dismissal.  As such, these falsified complaints could theoretically have

proximately caused Plaintiff's claimed injuries.  Plaintiff has provided sufficient factual basis for each of the categories of monetary relief he seeks in his Complaint.

### b.   *Injunctive Relief*

Plaintiff seeks injunctive relief on three grounds: (1) reinstatement into the employ of Scholastic; (2) dissolving the debarment of Plaintiff from the "premises and business of Stafford County schools"; and (3) prohibiting Defendants from "continuing to employ procedures and methods . . . pertaining to [unlawful] 'no trespass' orders or instructions" as to Plaintiff or any other similarly situated parties.

As to the first ground for injunctive relief, there appears to be agreement between the parties that such relief solely applies to Scholastic and not to SCSB and Duffy.  Dkt. 6 at 24; Dkt. 8 at 22.  Therefore, such relief is potentially only available with respect to Scholastic.

With respect to the second ground for injunctive relief, Plaintiff pleads a plausible basis for ordering the dissolution of Plaintiff's debarment from Stafford County schools.  As this Court discussed *supra*, Plaintiff's Complaint sets out a plausible basis for finding that Duffy violated § 1983 by infringing upon certain of his fundamental rights protected in the First Amendment and the Fourteenth Amendment.  Moreover, Plaintiff pleads sufficient factual grounds to argue for equitable relief under the four-part test enunciated in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[6]

As to Plaintiff's third request for injunctive relief, SCSB and Duffy articulate three arguments against Plaintiff's request.  SCSB and Duffy first argue that Plaintiff does not have

---

[6]  The alleged facts in the Complaint support a plausible basis for finding that: (1) Plaintiff has suffered an irreparable injury; (2) for which there is no adequate remedy at law; (3) the balance of hardships between the parties warrants equity; and (4) the public interest would not be harmed if such debarment were dissolved.  *See* Dkt. 8 at 23 (providing the case for injunctive relief as to the facts alleged in the Complaint).

standing to obtain injunctive relief because he requests that SCSB and Duffy be enjoined from using no-trespass orders against "others similarly situated." *Id.* at 24 (quoting Dkt. 1-1, 26 ¶ (c)). It is true that Plaintiff has standing only for injuries he has sustained himself. *See Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 283 (4th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Therefore, Plaintiff does not have standing for the injunctive relief requested *as to* "others similarly situated." Dkt. 1-1, 26 ¶ (c). However, he does have standing to request injunctive relief as to the no-trespass order against him.

SCSB and Duffy further argue that Plaintiff's request for injunctive relief fails to state a claim because Plaintiff seeks to enjoin them from doing something unlawful, which the law already requires. Dkt. 6 at 24-25. Absent statutory mandate or specific case law, neither of which this Court is aware, the mere fact that conduct is considered illegal does not preclude the availability of injunctive relief as a potential remedy. Therefore, this argument is unpersuasive.

SCSB and Duffy conclude their argument on this ground by claiming that any court order not to engage in sex-based discrimination in violation of Title VII does not relate to any claims waged against them or any of Plaintiff's injuries alleged as a result of their conduct. *Id.* at 25. However, Defendants have not raised any arguments to this effect in their briefs despite Plaintiff including an entire count against them in the Complaint on this basis. Dkt. 1-1, ¶ 41.

Consequently, Plaintiff's third request for injunctive relief is partially dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 against all Defendants are dismissed, as are his claims against SCSB and Scholastic under 42 U.S.C. § 1983. What remains of Count Two is Plaintiff's 42 U.S.C. § 1983 claim against Duffy. Moreover, each

of the requested remedies in Plaintiff's Complaint remain viable except for injunctive relief as to

unnamed parties similarly situated to Plaintiff.

     Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendants'

Motions (Dkt. Nos. 5; 15) are GRANTED in part and DENIED in part.

     It is so ORDERED.

Alexandria, Virginia
January 12, 2022

                               /s/

                        Rossie D. Alston, Jr.
                        United States District Judge